<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CARLOS ALBERTO PEREZ SILVA,<br><br>　　　*Petitioner*,<br><br>　　v.<br><br>LUIS SOTO, et al.,<br><br>　　　*Respondents*. | Civil Action No. 25-16577<br><br>**OPINION**<br><br>December 4, 2025 |

**SEMPER**, District Judge.

     **THIS MATTER** comes before the Court upon the Petition for Writ of Habeas Corpus of Carlos Alberto Perez Silva ("Petitioner"), under 28 U.S.C. § 2241 and his Motion for a Temporary Restraining Order. (ECF 2.) Petitioner challenges the statutory basis of his current immigration detention, seeks immediate release or a bond hearing, and requests injunctive relief preventing his transfer or removal from this District. Having reviewed the parties' submissions and the record as a whole, and for the reasons set forth below, the Court grants the requested relief in part—concluding that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is therefore entitled to a bond hearing before an Immigration Judge, and continuing the existing injunction solely to preserve the Court's jurisdiction.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

     In February 2001, Petitioner, a citizen of Colombia, arrived at Miami International Airport while traveling from Bogota to Madrid and immediately sought asylum upon inspection. (ECF 7-3, Notice and Order of Expedited Removal, "Ex. C".) On February 11, 2001, the Department of

Homeland Security ("DHS") issued a Notice and Order of Expedited Removal, and Petitioner was taken into immigration custody the following day pending a credible-fear interview. (*Id.*) Petitioner was subsequently released on parole from Krome Detention Center on February 23, 2001. (*Id.*) Several months later, on August 3, 2001, an Immigration Judge ordered Petitioner removed in absentia for failure to appear at his removal proceedings. (*Id.*) Petitioner alleges that he was served with a defective Notice to Appear "resulting in a missed hearing and a removal order." (ECF 2 ¶ 24.)

Approximately twenty-four years later, on May 8, 2025, Petitioner filed an I-485, Application to Register Permanent Residence or Adjust Status. (ECF 2 ¶ 29.) On September 2, 2025, Petitioner filed a Motion to Reopen on the basis that he did not receive notice of the hearing in which he was ordered removed in *absentia*, along with a request for stay of removal. (*Id.* ¶ 30.) On September 5, 2025, an Immigration Judge in Miami Immigration Court granted Petitioner's stay of removal pending the Motion to Reopen. (ECF 2 at 60-62, Stay of Removal Pending Motion, "Ex. E".)

On the same day, September 5, 2025, Petitioner was encountered in Cranbury, New Jersey and taken into custody of U.S. Immigration and Customs Enforcement ("ICE") pursuant to the 2001 expedited removal order. (ECF 7, Ex. C.) On September 10, 2025, DHS denied Petitioner's I-485 Application to Register Permanent Residence or Adjust Status. (ECF 2 at 30.)[1] On

_____

[1] United States Citizenship and Immigration Services ("USCIS") determined that the unexecuted removal order entered by the Immigration Judge in August 2001 remained in effect and that the underlying removal proceedings had not been terminated. Under the INA and its implementing regulations, adjustment of status is a discretionary form of relief that requires both statutory eligibility and a favorable exercise of discretion. *See, e.g.,* 8 C.F.R. §§ 245.1(c)(8)(ii), 1245.2(a)(1); INA § 245(a). Citing the principle that such relief is reserved for particularly meritorious cases, including those where the existence of family ties and length of residence in the United States warrant a favorable exercise of discretion, USCIS concluded that the outstanding removal order constituted a dispositive adverse factor outweighing any positive equities. On that

September 18, 2025, a Miami Immigration Judge granted the Motion to Reopen, finding that the "record of proceedings contains evidence that the notice of hearing was returned to the court, noting 'undeliverable as addressed, forwarding order expired.'"  (ECF 6, Order, "Ex. E".)  Thus, the court found the motion should be granted because of the "threshold issue that [Petitioner] did not receive the notice of hearing for the August 3, 2001 master calendar hearing" and reopened the proceedings.  (*Id.*)

On October 10, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the legality of his immigration detention.  (ECF 1.)  On October 15, 2025, Petitioner filed an Amended Petition and Motion for Temporary Restraining Order ("TRO"), naming as Respondents the Attorney General of the United States, the Acting Secretary of the Department of Homeland Security, the Acting Director of ICE, and several local field and detention officials.  (*See* ECF 2.)  Petitioner alleges that his detention violates the Due Process Clause of the Fifth Amendment, that the conditions of confinement at Delaney Hall Detention Facility and Winn Correctional Center are punitive, and that the Court possesses jurisdiction to order his release or a bond hearing. (*Id.*)

On October 16, 2025, pursuant to 28 U.S.C. § 1651, the Court temporarily enjoined Respondents from transferring Petitioner outside this Court's jurisdiction or removing him from the United States pending further order.[2]  (ECF 3.)  On October 28, 2025, Petitioner submitted a Letter with Exhibit E supplementing the record.  (ECF 6.)

---

basis, USCIS denied the adjustment application and advised that the decision was not subject to administrative appeal.

[2] That same day, the Court set a motion date of November 17, 2025, indicating that the motion would be decided on the papers unless otherwise directed, and entered a Text Order directing Petitioner to serve the Petition and TRO on Respondents, requiring Respondents to respond within seven days.  (ECF 3.)

On October 29, 2025, Respondents filed a Response to the Petition and Opposition to the TRO, supported by exhibits including a Form I-213, a Notice to Appear dated February 20, 2001, and an Order of Expedited Removal dated February 11, 2001. (ECF 7.) Respondents contend that Petitioner's detention is lawful under 8 U.S.C. §§ 1231(a) and 1225(b), that the Court lacks jurisdiction over conditions-of-confinement claims, and that Petitioner fails to satisfy the requirements for injunctive relief. (*Id.* at 17-30.)

On November 1, 2025, Petitioner filed a Reply in further support of the Amended Petition and TRO. (ECF 8.) He asserts that his detention under § 1225(b) is unlawful given the Immigration Judge's September 18, 2025 order reopening his removal proceedings, his twenty-four years of residence in the United States, and his pending adjustment-of-status application. (*Id.* at 2-6.) He seeks immediate release or, in the alternative, a bond hearing pursuant to § 1226(a), and maintains that the Court has jurisdiction to address the punitive conditions of his confinement. (*Id.* at 8-9.) The Court has reviewed the Amended Complaint and the parties' submissions, and resolves this matter on the papers pursuant to Local Civil Rule 78.1.

## II.     LEGAL STANDARD

A petition for a writ of habeas corpus under 28 U.S.C. § 2241 is the appropriate vehicle for a noncitizen to challenge the legality of immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–688 (2001); *Dryden v. Green*, 321 F. Supp. 3d 496, 500 (D.N.J. 2018). Federal courts have jurisdiction under § 2241 to review the constitutionality and statutory validity of such detention, provided the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The inquiry under § 2241 is limited to the lawfulness of the petitioner's confinement rather than the validity of the underlying removal order. *See Demore v. Kim*, 538 U.S. 510, 516–517 (2003).

4

This jurisdiction operates alongside the limitations imposed by 8 U.S.C. § 1252. Section 1252(g) bars review of three specific prosecutorial actions—commencing proceedings, adjudicating cases, and executing removal orders—and has been interpreted not to reach collateral challenges to detention. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–483 (1999). Section 1252(b)(9) consolidates "arising from" claims into a petition for review but does not extend to challenges that concern detention rather than the process of adjudicating removability. *Jennings v. Rodriguez*, 583 U.S. 281, 293–295 (2018); *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 184–185 (3d Cir. 2020).

The statutory authority for detention depends on the stage of proceedings. Section 1225(b) governs certain individuals seeking admission and mandates detention pending inspection. Section 1226(a) governs discretionary detention of noncitizens during removal proceedings and provides for the possibility of an individualized bond hearing before an Immigration Judge. *Jennings*, 583 U.S. at 297–306. Section 1226(c) concerns mandatory detention of certain criminal noncitizens; the Third Circuit has held that, when such detention becomes significantly prolonged, due process may require an individualized hearing. *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 473–478 (3d Cir. 2015); *German Santos v. Warden Pike Cnty. Corr. Fac.*, 965 F.3d 203, 210–212 (3d Cir. 2020). Section 1231(a) governs post-order detention following entry of a final removal order and authorizes confinement for the period reasonably necessary to effectuate removal. *Zadvydas*, 533 U.S. at 689, 701.

Conditions-of-confinement claims generally fall outside the scope of habeas review and are ordinarily brought through civil-rights actions. *Cardona v. Bledsoe*, 681 F.3d 533, 535–537 (3d Cir. 2012). The Third Circuit has recognized a narrow exception where conditions allegedly

5

render continued detention unconstitutional; that exception has been applied sparingly. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323–325 (3d Cir. 2020).

Within this legal framework, the Court evaluates whether Petitioner is detained under the correct statutory authority and whether that detention accords with the procedural and constitutional requirements governing immigration custody.

## III.    ANALYSIS

### A. Federal Jurisdiction and Scope of Review Under § 2241

Petitioner challenges the legality of his continued detention by ICE and seeks either immediate release or a bond hearing. (*See* ECF 1, 2, 8.) He further alleges that the conditions of his confinement at Delaney Hall Detention Facility in New Jersey and Winn Correctional Center in Louisiana are unconstitutional. (ECF 2 ¶¶ 36–40.)

The District Court possesses jurisdiction under 28 U.S.C. § 2241 to review claims that the fact or duration of immigration detention violates federal law or the Constitution. *Zadvydas*, 533 U.S. at 687; *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 226 (3d Cir. 2011). However, § 2241 does not provide jurisdiction over claims that challenge the general conditions of confinement rather than the legality of custody itself. *Cardona v. Bledsoe*, 681 F.3d 533, 535–536 (3d Cir. 2012) (holding that § 2241 does not confer jurisdiction over claims addressing the general circumstances or quality of a detainee's treatment rather than the lawfulness or length of custody).

### 1. The Impact of Hope v. Warden York County Prison on Conditions of Confinement

In *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), the Third Circuit held that § 2241 may, in extraordinary circumstances, provide a vehicle for detainees to seek release based on unconstitutional conditions of confinement. *Hope* involved civil immigration detainees facing acute and imminent medical risk during the COVID-19 pandemic; the conditions

at issue were so "severe" and "unique" that release was the only remedy capable of addressing the alleged constitutional harm. *Id.* at 323–325.

Crucially, however, *Hope* expressly reserved the question whether less serious conditions—those not presenting the kind of existential threat confronted during an uncontrolled pandemic—could support a habeas claim. *Id.* at 325. Subsequent decisions have emphasized the "extraordinary" and fact-specific nature of *Hope*, limiting its reach. *See, e.g., Perri v. Warden FCI Fort Dix*, 2024 WL 3633567, at *2 (3d Cir. Aug. 2, 2024) (declining to extend *Hope* where "the extraordinary circumstances" present during the early COVID-19 pandemic were no longer present). Courts after *Hope* have therefore permitted § 2241 conditions claims only where the challenged conditions make detention itself unconstitutional and only release—not remediation—could remedy the violation.

### B. Statutory Authority Governing Petitioner's Current Detention

The government's continued reliance on a vacated expedited-removal order to justify § 1225(b) detention is untenable. The record reflects that ICE initially detained Petitioner pursuant to an expedited removal order entered in 2001. (ECF 7.) Respondents rely on that order and related documents—a Form I-213 dated October 20, 2025, a February 20, 2001 Notice to Appear, and a February 11, 2001 Order of Expedited Removal—to justify detention under 8 U.S.C. § 1225(b). (*Id.*, Exs. A–C.) They argue that Petitioner remains an "applicant for admission" subject to mandatory detention. (*Id.* at 9.)

That position is undermined by the undisputed fact that, on September 18, 2025, an Immigration Judge granted Petitioner's Motion to Reopen his removal proceedings. (ECF 6.) The reopening vacated the prior removal order and returned his case to active adjudication. (*Id.*) Reopening reinstates proceedings to the same posture as if the earlier decision had not been

entered, thereby returning the case to active adjudication and nullifying the operative effect of the prior removal order. *See Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004). Accordingly, as of the reopening date, Petitioner was no longer detained under a final order of removal but was instead placed back into the ordinary adjudicatory process governed by 8 U.S.C. § 1226(a), which authorizes detention "pending a decision on whether the alien is to be removed."

The government's continued classification of Petitioner as an arriving alien under § 1225(b) is particularly strained in light of his lengthy residence in the United States. (ECF 7 at 17.) The record establishes that he has lived here continuously since 2001 and is married to a U.S. citizen. (ECF 1, 8.) Under these circumstances, he cannot plausibly be characterized as an individual seeking initial entry at the border. *See Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *6 (D.N.J. Sept. 26, 2025). This Circuit has recently recognized that, once a prior removal order is reopened, § 1226(a) rather than § 1225(b) governs continued detention. *See id.*; *De Fatima Lomeu v. Soto*, No. 25-16589, 2025 WL 2981296, at *8 (D.N.J. Oct. 23, 2025) (holding that a long-resident noncitizen apprehended years after entry and following reopening of removal proceedings is detained under § 1226(a), not § 1225(b), because she was no longer "seeking admission").

Accordingly, the factual record supports the conclusion that Petitioner's detention remains statutorily authorized, but under § 1226(a), not § 1225(b). That distinction is significant because § 1226(a) permits an individualized custody determination before an immigration judge, while § 1225(b) mandates detention without such review. *See Jennings v. Rodriguez,* 583 U.S. 281, 296-302 (2018) (distinguishing the statutory schemes governing §§ 1225(b) and 1226, and explaining that § 1226(a) affords discretionary custody and bond review while § 1225(b) contemplates

mandatory detention without such hearings).  On this record, the government appears to have misapplied the statutory framework.

Although the Court concludes that Petitioner is now detained pursuant to § 1226(a), it bears emphasis that immediate release is not warranted on this record.  At the time of Petitioner's arrest, a facially valid, unexecuted removal order remained in place.  (*See* Ex. C.)  However, the Court notes that on September 5 and 19 respectively, an Immigration Judge granted a stay of Petitioner's removal proceedings and granted his Motion to Reopen.  (*See* ECF 2, Ex. E; ECF 6, Ex. E.)  Section 1226(a) governs discretionary detention of noncitizens during removal proceedings and provides for the possibility of an individualized bond hearing before an Immigration Judge.  *Jennings*, 583 U.S. at 297–306.  Because the record establishes that § 1226(a) governs Petitioner's custody, he is entitled—through ordinary operation of that statute —to an individualized bond redetermination before an immigration judge. This conclusion resolves the statutory component of the habeas petition.

### C. Due Process Considerations of Civil Immigration Detention

Although immigration detention is civil rather than punitive, it nonetheless implicates the liberty interests protected by the Fifth Amendment.  *Demore v. Kim*, 538 U.S. 510, 528—531 (2003) (underscoring that § 1226(a) operates as the general detention provision that affords non-arriving aliens an individualized bond hearing—an important procedural protection absent from the mandatory regime).  Due process requires that detention bear a reasonable relation to its purpose and not become unreasonably prolonged.  *German Santos v. Warden Pike Cnty. Corr. Fac.*, 965 F.3d 203, 210 (3d Cir. 2020).

The central due process issue presented is the procedural posture under which DHS continues to detain Petitioner following the reopening of his proceedings. Once the Immigration

Judge reopened the case on September 18, 2025 (ECF 8 at 2), Petitioner no longer fell within the mandatory-detention framework of § 1225(b).  At that point, detention proceeded under § 1226(a), which affords noncitizens a statutory right to an individualized custody redetermination before an Immigration Judge.  Recent decisions in this District underscore that DHS may not detain an individual pursuant to § 1226(a) without providing such a bond hearing.  *See Soto v. Soto, et al.*, No. 25-cv-16200, 2025 WL 2976572, at *5 (D.N.J. Oct. 22, 2025).  This requirement is consistent with *Jennings*, which reaffirms that although the immigration detention statutes do not impose temporal limits, the Government must adhere to the procedural safeguards the statutory scheme demands.

Because DHS continues to detain Petitioner under § 1226(a) without evidence that he has been afforded the individualized bond hearing that the statute guarantees, his confinement raises a significant due process concern.  Should DHS persist in detaining Petitioner without providing the required custody redetermination, the legality of that detention would become increasingly untenable under both the statute and the Fifth Amendment.

 On the present record, the Court cannot yet find a constitutional violation, but the absence of a bond hearing following the reopening of proceedings warrants close scrutiny and timely correction.

### D. Conditions of Confinement

Petitioner alleges that the conditions of confinement at Delaney Hall and Winn Correctional Center are punitive and unsanitary, describing, among other things, overcrowded living quarters, lack of clean bedding, spoiled food containing black mold, and limited access to showers. (ECF 2 ¶¶ 36–39; ECF 8 at 7–8.) But they do not fall within the narrow class of "extraordinary" circumstances that make habeas relief a permissible vehicle under *Hope*.

The government disputes Petitioner's claims and argues that they are not properly before the Court. (ECF 7 at 8.) The Court agrees. Petitioner does not allege a medical or existential risk comparable to *Hope*:

> 32. The first night at Delaney, Mr. Silva was transferred to an overcrowded room with approximately thirty other detainees. Upon entering, and without any blanket or pillow, he was directed to find a place to sleep on the floor. As told, Mr. Silva found an area on the dirty floor between other detainees and attempted to obtain some rest – the room was so cold that at Mr. Silva was "grateful it was overcrowded" for purposes of additional warmth. Exhibit A, ¶ 11.

> 33. The following day, Mr. Silva was placed in one of the several sleeping rooms at Delaney. The windowless twenty by fifteen-foot room was shared with approximately ten to twenty other detainees dependent on the overflow of detainees each day. *Id.* ¶ 12-14.

> 34. Albeit, Mr. Silva was no longer sleeping on the floor, but the sleeping conditions in the shared room were not significantly better than his first night's experience. Mr. Silva was given a bed that was as "hard as a rock," a pillow, and a blanket, that falls apart upon use resulting in significant dust fibers. Due to unavoidably inhaling the dust fibers, Mr. Silva suffers with throat pain, which has required visits to the Delaney medical unit. *Id.*

> 35. Mr. Silva is permitted one hour of outdoor activities and access to a separate lounge area that has one singular television for the entire prison. *Id.* ¶ 16.

> 36. On multiple occasions, Mr. Silva was served meals ridden with mold, which now requires him to inspect every meal prior to eating. *Id.* ¶ 18.8

> 37. On or about September 9, 2025, Mr. Silva was unexpectedly transferred to Winn. *Id.* ¶ 19.

> 38. Upon being processed, Mr. Silva was directed to a small room with approximately forty other detainees. Similar to Delaney, at Winn, Mr. Silva was directed to find a place to sleep on the floor. Unlike Delaney, Mr. Silva was handed two garbage bags to sleep on. As directed, Mr. Silva found a place to sleep between all the other detainees, and laid one garbage bag down on the floor and used the other as a blanket. These inhumane sleeping conditions lasted the initial two days of detainment at Winn. Further, Mr. Silva was

> never given any bed, pillow, real blanket, or even place to shower, the first two nights at Winn– he wrapped himself in garbage bags and slept crammed up against other detainees on the dirty floor. *Id.* ¶ 21.
>
> 39. After the initial two days Mr. Silva was directed to a sleeping room with approximately ninety other individuals. Along with the other ninety individuals, Mr. Silva received a small bed and only had access to a single toilet and shower. At Winn, Mr. Silva was required to utilize a toilet that was out in the open. Because approximately ninety other individuals were able to see Mr. Silva utilize the bathroom, he and other detainees hung garbage bags for purposes of privacy. *Id.* ¶ 23.

(ECF 2 ¶¶ 32–39.)

Therefore, Petitioner's allegations fall within the category of conditions traditionally addressed through civil-rights litigation under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) (establishing a judicially created federal damages action for certain constitutional violations by individual federal officers) or § 1983—not habeas corpus. Consistent with *Cardona v. Bledsoe*, 681 F.3d 533, 535–536 (3d Cir. 2012), claims seeking relief from general conditions of confinement, as opposed to the fact or duration of custody, are not cognizable under § 2241. And because the conditions alleged here, unlike those in *Hope*, do not constitute extraordinary circumstances that render continued detention per se unconstitutional, *Hope* does not alter that jurisdictional conclusion.

Nor does Petitioner claim that only release could remedy the harm he identifies. *Id.* Consistent with *Cardona*, these allegations must therefore be pursued, if at all, in a separate civil-rights action. The Court accordingly dismisses the conditions-of-confinement claims without prejudice.

**E. Emergency Relief and the Standards Governing a Temporary Restraining Order**

In addition to habeas relief under § 2241 based on the asserted unlawfulness of his detention, Petitioner seeks emergency relief under Rule 65 in the form of a TRO.  (ECF 2.)

Here, the record does not support the extraordinary remedy of release. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (explaining that a preliminary injunction is "an extraordinary remedy" requiring a clear showing of entitlement). Petitioner has not demonstrated a likelihood of success on a claim entitling him to immediate freedom from custody.  His detention remains statutorily authorized under § 1226(a), *see Jennings*, 583 U.S. at 296–302, and the brief duration since the reopening of his removal proceedings does not establish a due process violation. *See Demore*, 538 U.S. at 529–531.  However, Petitioner has raised a substantial question as to the proper statutory basis for his detention, warranting preservation of the Court's jurisdiction while that issue is adjudicated.

Balancing the equities, the government's interest in enforcing immigration laws and ensuring attendance at removal proceedings remains strong, *see Carlson v. Landon*, 342 U.S. 524, 538–542 (1952) (recognizing the government's substantial interest in detention pending removal where necessary to ensure appearance and protect the public), while the petitioner's interest in preserving judicial review is adequately protected by continuation of the status quo.  The public interest likewise favors adherence to lawful procedures without undue interference in the executive's administration of the immigration laws.  *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (emphasizing the substantial public interest in the uniform and orderly administration of immigration laws).

Accordingly, the motion for a TRO will be denied insofar as it seeks Petitioner's immediate release, but granted to the limited extent necessary to preserve the Court's jurisdiction by maintaining the October 16, 2025 injunction against transfer or removal.  (*See* ECF 3.)

To be clear, the Court's denial of TRO relief does not diminish the substantive determination reached on the habeas petition that § 1226(a), rather than § 1225(b), governs Petitioner's custody.  That ruling affords Petitioner the statutory protections associated with § 1226(a), including the opportunity to seek an individualized bond determination before an immigration judge.  Here, emergency injunctive relief is unnecessary to remedy that statutory misclassification.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court finds that Petitioner's current detention, while authorized, is governed by 8 U.S.C. § 1226(a) rather than § 1225(b).  Accordingly, the habeas petition is **GRANTED** in part insofar as the Court concludes that Petitioner's custody is governed by 8. U.S.C. § 1226(a), and is therefore entitled to seek an individualized bond determination before an Immigration Judge, and **DENIED** in all other respects.

Petitioner's Motion for TRO is likewise **DENIED** in part and **GRANTED** in part.  The motion is denied to the extent it seeks Petitioner's immediate release, but granted to the extent necessary to maintain the Court's jurisdiction by continuing the existing injunction prohibiting Petitioner's transfer or removal from the District of New Jersey pending adjudication of the habeas petition.

Petitioner's claims concerning conditions of confinement are **DISMISSED** without prejudice to permit the filing of an appropriate civil-rights action.  An appropriate Order will follow.

_/s/ Jamel K. Semper_____
**Hon. Jamel K. Semper**
**United States District Judge**